UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KADANT JOHNSON, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-2869** |
| **JOSEPH V. D'AMICO, LOUISIANA STEAM EQUIPMENT, LLC and UTILITIES OPTIMIZATION GROUP, LLC** | **SECTION "C" (2)** |

## ORDER & REASONS

Before the Court are two motions: (1) the motion for review of the Magistrate Judge's Order, titled Plaintiff Kadant Johnson's L. R. 72.2 Objections to Magistrate's Order, (Rec. Doc. 199), and (2) Motion for Partial Summary Judgment filed by Defendants Louisiana Steam Equipment, LLC ("LSE"), LSE Systems, Inc. ("LSE Systems"), Utility Construction Group, Inc. ("UCG"), and Utilities Optimization Group ("UO Group") (collectively, "Defendants"). (Rec Doc. 171). Based on the memoranda of the parties, the law, and the record in this case, Plaintiff's Motion is denied and Defendants' Motion is granted for the following reasons.

**I. BACKGROUND**

The case before the Court comprises claims from two consolidated lawsuits. On June 21, 2010, Plaintiff filed his first suit in Alabama state court against Joseph V. D'Amico ("D'Amico"), LSE, UO Group, and affiliated companies, alleging breach of contract. (Rec. Doc. 1-8). In his First

Amended Complaint, Plaintiff made additional breach of contract claims and claims for tortious interference under Michigan law, unfair trade practice under Michigan law or Louisiana law and misappropriation of trade secrets under Michigan law or Louisiana law. (Rec. Doc. 22). In his Second Amended Complaint, Plaintiff made additional claims for breach of contract, for false designation and/or false description under 15 U.S.C. § 1125, for violation of the Michigan Consumer Protections Act, M.C.L. 445.901 *et seq.*, any unfair competition and/or unfair trade practice claims should Michigan and/or Louisiana law not apply in this case, and any additional claims under state or federal law that Plaintiff discovers in the course of his investigation of claims in his original Complaint, First Amended Complaint, and Second Amended Complaint. (Rec. Doc. 73). The suit was transferred to this Court and captioned 10-2869. (Rec. Doc. 5).

On September 30, 2010, Plaintiff filed his second suit in the Eastern District of Michigan against LSE, LSE Systems, UO Group, and UCG, alleging infringement of Plaintiff's patent, U.S. Patent No. 5,098,135 ("'135 Patent") its "Rotary Joint With Axial Compensation" ("rotary joint") under 35 U.S.C. § 271(a) and (c). (Case No. 11-36, Rec. Doc. 1). In his First Amended Complaint, Plaintiff added a claim for trademark infringement under 15 U.S.C. § 1114 and a claim for copyright infringement under 17 U.S.C. § 501 *et seq*. (Rec. Doc. 71). The suit was transferred to this Court and captioned 11-36. (Case No. 11-36, Rec. Doc. 28). On January 18, 2011, the two suits were consolidated. (Rec. Doc. 34).

**II. LAW & ANALYSIS**

    **A. Objections to Magistrate's Order (Rec. Doc. 199) (refers to 10-2869 and 11-36)**

Plaintiff sought an Order allowing each of Plaintiff's counsel handling the contract case and the patent case to individually question all deponents. (Rec. Doc. 156). He argued that not

permitting each of Plaintiff's lead counsel to do so (1) contravened this Court's Order consolidating (not merging) the two cases which each presented "different and distinct legal claims"; and (2) deprived each counsel from a "fair and reasonable opportunity to take specialized discovery." (Rec. Doc. 156 at 1). The Magistrate Judge denied Plaintiff's Motion, finding that allowing each of Plaintiff's lead counsel to question all deponents would go against the efficiency purposes of consolidation, and that no expertise in contract law was necessary for taking depositions or conducting other discovery. (Rec. Doc. 177).

A district court may only reverse a Magistrate Judge's ruling where the court finds the ruling to be "clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. Proc. 72(a); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). "This highly deferential standard requires the court to affirm the decision of the Magistrate Judge unless 'on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed.'" *Benoit v. Nintendo of America, Inc.*, 2001 WL 1524510, *1 (E.D. La. 2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A motion to review is appropriate when a Magistrate Judge has obviously misapprehended a party's position, the facts, or the applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *Gaffney v. U.S. Dept. of Energy*, 2000 WL 1036221, *2 (E.D. La. 2000).

This Court is satisfied with the Magistrate Judge's analysis in this context of Federal Rule of Civil Procedure 30(c)(1)[1] of the Federal Rules of Civil Procedure and Local Rules 43.2[2] and

---

[1] Rule 30(c)(1) states: "The examination and cross-examination of a deponent proceed as they would at trial...." Fed. R. Civ. P. 30(c)(1).

[2] Local Rule 43.2 states: "Only one attorney for each separate interest may conduct examination of any one witness or present argument or urge objections concerning the testimony of that witness, except with leave of court." Local Rule 43.2.

3

83(b)[3], which grant judges broad discretion in conducting discovery proceedings. Plaintiff spent considerable time in his initial Motion and his Objections arguing why expertise in patent law is necessary for questioning witnesses about infringement, but he does not explain why that same specialist would be inadequate for questioning witnesses about the contract issues. Instead, Plaintiff dismisses this possibility in a single conclusory sentence: "Similarly, requiring [Kadant Johnson's] patent counsel to examine witnesses on the breach of contract claim and particulars of the unfair competition issue is unfair, prejudicial and, in effect, denies [Kadant Johnson] the right to counsel of its choosing to prepare the separate cases for trial." (Rec. Doc. 199-1 at 11).

Plaintiff cites to *Dupont v. Southern Pac. Co.* to demonstrate that courts may permit more than one lawyer to question deponents, but he makes no attempt to analogize his alleged prejudice with the prejudice in that case, and the Court is not persuaded that the cases are analogous. 366 F.2d 193 (5th Cir. 1966) (holding that consolidation of three cases of survivors of a car accident with case of survivor of deceased driver confused the jury and created a conflict of interest that prejudiced all parties and constituted reversible error). Like the Magistrate Judge, this Court discerns no reason why the lead patent lawyer cannot also question deponents with factual knowledge concerning the contract or other non-patent issues in these cases. (*See* Rec. Doc. 177 at 1). The Court also agrees that granting Plaintiff's Motion would not serve the efficiency purposes of consolidation under Federal Rule of Civil procedure 42(a), as Plaintiff's Motion would cause precisely the type of duplicative discovery that the Rule was designed to prevent.[4] Finally, Plaintiff fails to cite to any

---

[3]Local Rule 83(b) states: "A judge may regulate practice in any manner consistent with federal law . . . and the district's local rules." Local Rule 83(b).

[4]

Rule 42(a) states: "If actions before the court involve a common question of law or fact, the court may:
    (1) join for hearing or trial any or all matters at issue in the actions;

4

authority that he must be given permission to have all deponents questioned by the lead counsel of both of his cases. Accordingly, this Court finds that the Magistrate Judge's ruling was not clearly erroneous, and it denies Plaintiff's motion for review.

**B. Motion for Partial Summary Judgment (Rec. Doc. 171) (refers only to 11-36)**

In their Motion, Defendants argue that there is no genuine issue of fact whether Plaintiff is eligible for pre-suit damages under 35 U.S.C. § 287 ("patent marking statute"), because Plaintiff failed to comply with the requirements for obtaining that relief. (Rec. Doc. 171). Specifically, they argue that the number of the '135 Patent was not affixed to the great majority of copies of the rotary joint itself, but merely marked on the device's packaging. (Rec. Doc. 171 at 2). Plaintiff does not dispute that most of the rotary joints were not marked, and that only the packaging was marked, but argues that Defendant's reading of the patent marking statute is impermissibly narrow, and that Plaintiff's markings were sufficient under the statute. (Rec. Doc. 187).

Summary judgment is proper only when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

---

(2) consolidate the actions; or
(3) issue any other orders to avoid unnecessary cost or delay.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

The issue in this Motion is whether Plaintiff complied with the patent marking statute such that he may demand pre-suit damages from Defendants in this case. The statute states:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.," together with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). In other words, a patentee may recover pre-suit damages for patent infringement only if (1) he affixed the word "patent" or "pat.," plus the number of the patent, directly onto the invention; or (2) if (1) is not feasible, if he affixed the same two elements to the device's packaging; or (3) if he failed to do (1) or (2), if he proves that he notified the infringer of the infringement and the infringer nevertheless continued to infringe, in which case he can obtain pre-suit damages

6

occurring after he notified the infringer. The first two options constitute constructive notice; the third constitutes actual notice. The Federal Circuit has stated: "[i]n order to satisfy the constructive notice provision of the marking statute, [the patentee] must have shown that substantially all of the [patented product] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous. *Nike v. Wal-Mart Stores*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). The patentee bears the burden of proving he complied with the above statute by a preponderance of the evidence. *Id*.

If a patentee fails to affix the word "patent" or "pat." and the number of the patent directly onto a substantial number of the devices, he must put forth evidence and convince the court that doing so was not feasible. Marking the device itself may not be feasible if that task would be prohibitively costly, *Wayne-Gossard Corp. v. Sondra Inc.*, 434 F. Supp. 1340, 1364 (D.C. Pa. 1977), or if the device is too small, *Sessions v. Romadka*, 145 U.S. 29, 50 (1892). However, if "the patented article has markings or printing on it, other than the appropriate patent marking, then the alternate form of patent marking on the package is not sufficient compliance with the [marking] statute." *Rutherford v. Trim-Tex*, 803 F. Supp. 158, 164, 163 (N.D. Ill. 1992) (citing *John L. Rie, Inc. v. Shelly Bros., Inc.*, 366 F. Supp. 84, 90-91 (E.D. Pa. 1973) (holding markings on patented bag closure device's packaging insufficient where device was marked with plaintiff's name and address) and *Creative Pioneer Products Corp. v. K-Mark Corp.*, 5 U.S.P.Q. 2d 1841, 1847-1848 (S.D. Tex. 1987) (holding markings on patented tool's packaging insufficient where tool's handle displayed other lettering and calibrations). The requirement in *Rutherford* that an invention marked with non-patent lettering also include patent lettering is tied to the purpose of the statute, that is, to give notice to the public that the item is patented: "[w]here the public finds markings or writings upon the article itself, the public should be able to rely upon the fact that a patent, if it exists, should also be noted

7

with that writing." *Rutherford*, 803 F. Supp. at 164.

However, a patentee may be found in compliance with the patent marking statute when he marked the packaging instead of the device, even if the device contains non-patent lettering. *See Heraeus Electro-Nite Co. v. Midwest Instrument Co., Inc.*, 2007 WL 3407128, *5 (E.D. Pa. 2007). The *Heraeus* Court so held for two reasons: first, the patented probes at issue are used once and destroyed through immersion in molten steel soon after they are removed from their containers; second, there was evidence that users of the probes would be unable to read the patent information if it were marked on the probes. *Id.* Yet where those two characteristics were absent, and where only some, but not all, portions of the invention were hidden from the public's view once installed, the court held that marking the packaging but not the actual invention was insufficient. *Belden Technologies, Inc. v. Superior Essex Communications, L.P.*, 733 F. Supp. 2d 517, 536 (D. Del. 2010).

Here, Plaintiff concedes that the number of the patent, '135, is not attached to Plaintiff's invention: "Plaintiff admits, that within the collective memory of the current management of the Plaintiff, Plaintiff has not affixed the number of the '135 patent directly to the rotary joint structure[]." (Rec. Doc. 117, Ex. A at 5). Thus, the parties agree that none of the devices themselves were marked with the number of the patent. Plaintiff alleges that he placed the patent marking and number on the container in which the patented items are sold. (Rec. Docs. 187 at 6 & 187, Ex. B at ¶ 19 & 171, Ex. A at 5). Although Defendants do not specifically agree with this allegation, they do not deny it, and the Court views it in the light most favorable to the Plaintiff at the summary judgment stage. Assuming the packaging is marked according to 35 U.S.C. § 287(a), Plaintiff can only recover pre-suit damages for infringement if he shows that it was not feasible to affix the patent number onto the device, or, if it was feasible, if he proves that he gave notice

(beyond marking the packaging) to Defendants of the infringement sufficient to satisfy the patent marking statute.

Defendants argue that it was feasible to place the patent designation and number directly onto the rotary joint because the rotary joint was marked with other, non-patent letters and numbers, as depicted in the photographs they attached to their Memorandum. (Rec. Doc. 171-1 at 8). Plaintiff argues that it was not feasible first, because marking the largest and most visible parts of the rotary joint would cause "undesirable increases in material porosity" of those parts, and second, because it would be a "logistical nightmare" to correctly mark the rotary joint, given that there are many foreign counterparts to the '135 patent, and errors in marking a given device would subject Plaintiff to liability. (Rec. Doc. 187 at 8-11).

The Court is not convinced by either of these arguments. The first argument assumes that the marking must be on the largest and most visible portions of the invention, but nothing in the 35 U.S.C. § 287(a) creates such a requirement, nor does Plaintiff indicate authority supporting this point. The photographs in Defendants' Motion clearly show that the rotary joints are marked with non-patent letters and numbers on portions that are visible to the public and that contain space for a patent designation and number. The photographs show, and Plaintiff agrees, that each rotary joint possesses an identification plate affixed to it. (Rec. Doc. 171-1 at 8 & 187-2 at ¶ 2). According to Plaintiff himself, the plate "provides the Kadant website address, the model number, the order number, and the temperature and pressure limitations of the joint." (Rec. Doc. 187-2 at ¶ 2). Plaintiff's sole justification for not including the patent information on this plate is not based on the inadequacy of the plate, but rather on the method by which the patent information would be placed on the plate. Specifically, if the patent marking was painted onto the plate, the marking would likely deteriorate because the rotary joint can be used in temperatures as high as 650 degrees, and "paints

and inks tend to 'bake off.'" (Rec. Doc. 187-1 at ¶ 16; *see also* Rec. Doc. 187-2 at ¶ 30). But the website, model number, order number, and other information already indicated on the plate are all stamped or embossed on the plate. They are not painted on the plate. Plaintiff provides no explanation as to why the patent information can not, like the other information, be stamped or embossed on the plate.

Plaintiff's second argument suggests that the logistical and financial burden of correctly marking a patent makes marking the rotary joint unfeasible under 35 U.S.C. § 287(a). But surely Plaintiff's patent is not the first to have many foreign counterparts. Instead of providing other examples where the existence of foreign counterparts seriously burdened the patentee in marking the invention itself, and instead of describing or quantifying the burden Plaintiff would face, Plaintiff argues in generalized terms and fails to analogize his case with those in which markings on packaging were sufficient under the patent marking statute. (Rec. Doc. 187 at 14). Unlike the probes in *Heraeus*, the rotary joint is not destroyed after a single use. Plaintiff cites to several cases where patent designation on the packaging was sufficient, but unlike the devices in those cases, which did not contain any lettering on the device itself, the rotary joint is equipped with a permanent plate containing identifying information. *See, e.g., Chicago Pneumatic Tool Co. v. Hughes Tool Co.*, 192 F.2d 620, 626 (10th Cir. 1951); *Saf-Guard Products, Inc. v. Service Parts, Inc.*, 491 F. Supp. 996, 1001, 1010 (D. Ariz. 1980).

Plaintiff otherwise failed to provide notice to the public that the rotary joint was patented. Plaintiff states that he believes that Defendants were "aware of the '135 patent, by virtue of their long-term relationship with Plaintiff," but submits no evidence of awareness, and he admits that he did not give Defendants actual notice of his allegation of infringement until he filed suit against Defendants on September 30, 2010. (Rec. Doc. 171, Ex. A at 5). Besides this contention, and

besides the allegation that the rotary joint's packaging is marked with the patent designation and number, Plaintiff puts forth no other evidence of notice. The Court recognizes that whether or not a marking is sufficient to satisfy the patent marking statute and thereby render a patentee eligible for money damages is typically a fact question for the jury to decide. However, summary judgment is appropriate where there is no genuine issue of material fact for the jury to decide. In particular, determining compliance with the patent marking statute is an inquiry amenable to disposition by summary judgment. *Belden*, 733 F. Supp. at 535. In this case, the Court finds that there is no such issue regarding whether Plaintiff complied with 35 U.S.C. § 287(a). Defendants made a prima facie case that Plaintiff failed to comply, and Plaintiff did not meet his burden to rebut it. Thus, there is no genuine issue of material fact whether Defendants had actual or constructive notice of the patent, and Defendants are entitled to judgment as a matter of law.

Accordingly,

IT IS ORDERED that Plaintiff's motion for appeal of the Magistrate Judge's order, titled Plaintiff Kadant Johnson's L. R. 72.2 Objections to Magistrate's Order, is DENIED. (Rec. Doc. 199).

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment is GRANTED. (Rec. Doc. 171).

New Orleans, Louisiana, this 9th day of January, 2012.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**