EXHIBIT B TO
DEFENDANTS' MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
TESTIMONY OF DR. ITZHAK GREEN ON INFRINGEMENT
UNDER DOCTRINE OF EQUIVALENTS

RE: Civil Action No.: 10-cv-02869
Pertains to: 11-cv-0036

**EXPERT REPORT OF DR. ITZHAK GREEN D.SC**
**PURSUANT TO FED.R.CIV.P 26(a)(2)(B)**

**CONFIDENTIAL/ATTORNEYS' EYES ONLY**

## QUALIFICATIONS

I am a Professor of Mechanical Engineering at The Georgia Institute of Technology in Atlanta, Georgia (also known as Georgia Tech, or GT). A copy of my curriculum vitae is attached to this Report as Annex 1. I have taught mechanical engineering to thousands of engineering students, ranging from undergraduate to graduate students, and have supervised the doctoral dissertation to numerous Ph.D. students in various aspects of mechanical engineering. I have further supervised visiting scholars and professors involved in my field of specialty.

I joined GT in 1985 and since 1988, I have taught on an annual basis two continuing education courses: (1) a Mechanical Engineering Refresher for practicing engineers who prepare for the Professional Engineering (PE) Exam (I have taught the entire mechanics and design content of the course); and (2) with colleagues from GT and the British Hydrodynamic Research Group (BHRG) I have been teaching and serving as the administrator of the course "Fluid Sealing Technology" given to practicing engineers seeking Continuing Education Units.

Throughout my career, I have specialized in seal design and technology. I began work in this field in 1976 with specific concentration on seal research and design

beginning in or about 1979. I have continuously conducted research on various aspects of seal design and technology, and have published widely in the leading national and international technical journals on these subjects. The title of my doctoral dissertation is "Mechanical Seals Dynamics."

**LISTING OF LEGAL CASES WHERE EXPERT TESTIMONY PROVIDED**

A list of the legal matters that I have been deposed, testified at trial or involved in mediation is included as Annex 2. See those specific matters highlighted in yellow and/or that include an asterisk "*" next to the matter.

**COMPENSATION**

I have been engaged by Plaintiff Kadant Johnson as a technical expert to review information presented to me relating to U.S. Patent No. 5,098,135 (the "'135 patent") and provide opinions which are discussed in this Report.

My compensation for time, study and preparation of testimony related to the opinions stated herein is $400.00 per hour plus travel and out-of-pocket expenses incurred relating to this legal matter. None of my compensation depends on the outcome of this legal matter.

**MATERIALS REVIEWED**

A list of documents and materials reviewed in the preparation of this Report are identified in the body of this Report and are listed in Annex 3 included with this Report.

## SUMMARY OF OPINIONS

As further explained below, based on the information reviewed, in my opinion:

1. The Louisiana Steam Equipment PTS rotary joint shown in the documents D-Patent-0001, -0004, -0020 and -0024, the disassembled PTS joint inspected at the LSE facility, and the PTS joints inspected at the Georgia Pacific Brewton facility as understood, include all of the components in each of the claims 1-12 in U.S. Patent No. 5,098,135; and

2. From my understanding of what is required for patent infringement as explained to me by Kadant Johnson's legal patent counsel, the Louisiana Steam Equipment PTS brand rotary joint infringes each of claims 1-12 of U.S. Patent No. 5,098,135.

## DETAILED OPINIONS AND REASONS

### A. U.S. Patent No. 5,098,135 Rotary Joint With Axial Compensation

On or about April 27, 2011, I was contacted by Kadant Johnson's (Plaintiff or KJ) outside patent counsel, Mr. Marshall MacFarlane (Counsel), to assist KJ with this legal case. I was presented with United States Patent Number 5,098,135 (the '135 Patent) which includes Figure 1 below. A copy of the '135 patent is included as Annex 4. I have studied the said patent in detail.



Figure 1. United States Patent Number 5,098,135 (Patent '135)

1. <u>'135 Patent Components, Function and Operation</u>

For a general explanation of the '135 patented rotary joint, its components and their functions, I refer to my Declaration dated July 21, 2011 beginning with paragraph 10 which is attached as Annex 5.

2. <u>Meaning of '135 Patent Claim 1 Terms that I Understand are in Dispute</u>

I was advised by Counsel that the meaning of the terms in the '135 Patent claims 1-12 is a question for the court to decide. At the time of this Report, I understand that the court has not yet made a decision on the meaning of several terms in claim 1 which I understand are disputed by KJ and Louisiana Steam Equipment (LSE) which I understand is one of the Defendants in this legal suit.

While we wait for the court's decision on the meaning of the claim terms, for purposes of this Report, I am using the meanings of these claim terms as explained in my Declaration paragraphs 7-9 and 13–18. Annex 5.

**B. The LSE PTS Rotary Joint**

Some rotary joint types (e.g., the accused LSE PTS or KJ's PTX shown below) include both fluid inlet and outlet paths. These paths are sometimes concentric to one another. The patented '135 invention depicts an example of a single path joint with fluid entering or exiting the journal and drum via the bore (110) which communicates with a conduit connection (112) for fluid ingress or egress. In this type of installation, rotary joints are usually found at both ends of the drum, with one end being the entryway for the fluid and the opposite end being the exhaust or drain. The LSE PTS rotary joints, that I understand are manufactured for LSE and are depicted in drawings D-Patent -0001, -0004, -0020 and -0024 (the -0020 -0001 and -0024 shown in Figs. 2b, 3a and 3b respectively below) have both of the inlet and outlet paths located at the same joint end.

On or about June 3, 2011, I received by email four files from Counsel on the LSE PTS rotary joint design. I was told that the PTS rotary joint is manufactured for LSE. A total of 54 pages were included, where the pages are numbered D-Patent-0001-0051.

I was told by Counsel that LSE's PTS joint was sold to and installed at the Georgia-Pacific Brewton facility (which indeed I have seen in operation at the said facility in a visit on a later date - details follow). For conciseness, only selected ones of these drawings are included in the body of the Report and are included full size in Annex 6, but I understand that the other documents are available from Counsel. One file, D-Patent-0006-0017, is a brochure that depicts a PTS model rotary joint (see Figure 2a) shown as installed on a machine. In Fig. 2b below, taken from file D-Patent-0018-0023, similar joints are shown in a cascade on a number of drums, and a design cross section is also given (which seems to be nearly identical to one of KJ's PTX joints, shown in Fig.

2c as taken from a KJ brochure). These PTS brochures (D-Patent-0006-0017 and D-Patent-0018-0023) are written in Chinese, a translation for which was not provided to me.

Figure 2a. PTS model rotary joint page D-Patent-0006

PTS9750-1型高速旋转接头 >>>

转速 110-2500rpm

适应烘缸宽度 6m以下

安装后小轴头内径 90mm

0.15Bar 的低压差排水

新纸机配套整体式环型支架

老纸机改造分体式环型支架

PTS旋转接头

Figure 2b. PTS model rotary joint, page D-Patent-0020

 

Figure 2c. Kadant Johnson PTX model rotary joint (the Kadant/Johnson symbol is visibly branded)

In documents D-Patent-0001-0005 and D-Patent-00024-0051, I found detailed technical drawings of what I was told was the LSE PTS joint design. A good understanding of the LSE rotary joint is best obtained by inspection of documents -0001, -0004 and -0024 to -0051. On pages -0001 and -0024, I found cross section drawings of two different PTS joints (see Figures 3a and 3b below). These two PTS joints are somewhat different in design, but are identical conceptually.

Joint & Stationary Syphon Configuration
XX
XX
XX
XX
Flanged Alternate 'A'
CONFIDENTIAL – ATTORNEY'S EYES ONLY
Civil Action No. 10-CV-02869

Figure 3a. Cross section of PTS model rotary joint, page D-Patent-0001, Annex 6

Figure 3b. Cross section of PTS model rotary joint, page D-Patent-0024, Annex 6

8

**B-8**

Drawing -0024 depicts a journal flange, sometimes referred to as an adaptor plate, at the rightmost end of the joint assembly. Although the journal flange is not identified by a number, it is the component which is immediately to the right of the gasket depicted as Item 8A on the drawing. This journal flange is typically secured to the drum journal by threaded fasteners. It is depicted on page -0004 as Item No. 19. Annex 6. It seems that the journal flange Item 19 is designed to accommodate a wide variety of different drum journals. Accordingly, journal flange Item 19 can be custom-machined to match the drum journal on which machine it will be mounted.

The rotary joint housing/body depicted in the PTS drawings is really an assembly consisting of the body (Item 1 on page 0024) including an end cap 3A, and an end flange 3, both depicted on page 0024. However, my examination of that drawing leads me to the conclusion that the draftsman has inadvertently inverted the item numbers "3A" and "3" on that drawing. The end cap is erroneously designated, therefore, as the end flange, and the end flange is erroneously designated as the end cap in the list of components found on that page. This error is confirmed by review of the detail drawings which illustrate the end flange and end cap. See D-Patent-0026 and -0027. This assembly of body parts is held stationary by a mounting ring bracket, identified as item 20 on page -0004, and shown in side view on page -0001. Annex 6. This support prevents the body/housing assembly from rotating in response to rotation of the drum journal.

The same drawings also depict the nipple, identified as Item 4 on page -0024 and shown in detail on page -0038. Annex 6. A portion of the nipple is positioned in the housing and end cap forming a through chamber or passageway for the fluid to move through the rotary joint. The nipple serves to flexibly seal the housing with the drum and

allow relative axial movement between the nipple and the housing to accommodate axial expansion and contraction of the drum journal due to heating and cooling fluctuations of the drum and the drum journal.

It is apparent from the drawings that the nipple is provided with a pair of O-ring seals shown as Item 25 on page -0024 (and detailed in D-Patent-0039, Annex 6), which form a seal between the nipple and the interior of the end cap portion of the body/housing. On the opposite end of the nipple is a seal ring (Item 17 on page -0004, and detailed in D-Patent-0045) which engages a cavity in the wear plate (Item 18 on page -0004, and detailed in D-Patent-0050) on one side, and engages the face of the nipple on the other. This forms two sealing dams: one sealing dam is the spherical surface on the back side of the seal ring fitting into the cavity in the wear plate, and the other is between the flat surfaces of the nipple and the seal ring (these two sealing dams are distinct from the aforementioned O-ring seals placed between the nipple and the end cap).

I was asked to compare the design, drawings and claims 1-12 of the '135 patented rotary joint and the accused PTS rotary joints shown in drawings D-Patent-0001 (Fig. 3a and c), -0004 (Annex 6), -0020 (Fig. 2b) and -0024 (Fig. 3b), and the LSE joint inspected at the LSE facility shown in Figs. 5a and 5b (all collectively are referred to as the "PTS joint") (Figure 5 will be discussed in detail below). As shown in the tables and illustrations below, even though there are some visible variations between the '135 Figures and the PTS joint, it is my opinion that in these areas of variation, these two joints ('135 and PTS) are designed to achieve the same goals, through substantially similarly functioning components.

Below are tables including each claim of the '135 patent and identification of the LSE PTS joint components that coincide with each component or element of each patent claim. A colored depiction of the LSE PTS joint shown in Figure 3a above is now included as Figure 3c for ease of reference and part identification. Additional lead lines and numbers coinciding with the '135 patent, have been added to Figure 3c for ease of comparison.

In the Table 1 below, where "admitted" is used, it is my understanding that LSE has factually admitted that the accused PTS joint includes this component and/or functional feature in discovery responses. See Annex 7, Defendants' Supplemental Responses to Plaintiff's Second Set of Request for Admission. Where "RFA" followed by a number is used, this refers to the specific request for admission and the response in Annex 7.

Fig. 3c (Identical to Fig. 3a but with color coded parts, handwritten lead lines, and numbers added, Annex 6)

Table 1 Comparison of '135 Claim 1 and the PTS Rotary Joint design

| '135 Claim | PTS Fig. 3c |
|---|---|
| 1. A rotary joint for a rotating drum having a journal having an axis of rotation | Admitted RFA 1, Annex 7 |
| characterized by its ability to accommodate axial expansion comprising, in combination, | A fundamental purpose of the PTS rotary joint is to maintain a seal as the drum and/or drum journal axially expands and contracts |
| an annular mounting flange having an axis and a central passage, | Admitted (shown in green in Fig. 3c) RFA 3, 4, 5 |
| fastening means defined on said flange for coaxially attaching said flange to the drum journal, | Admitted (green) RFA 6 |
| an annular wear plate having a central passage having an axis coaxially mounted on said flange, | Admitted (green) RFA 7, 8 |
| a seal surface defined on said wear plate concentric to said plate axis, | Admitted (green) RFA 9, 10 |
| an elongated housing having an internal chamber having a longitudinal axis, said housing having a port for communicating with a fluid conduit fitting, | Admitted (shown in red in Fig. 3c) RFA 11, 12 |
| support means supporting said housing substantially coaxial with the journal axis of rotation, | The PTS ring bracket (shown in blue in Fig. 3c) supports the housing (red) coaxially with journal rotational axis |
| a cylindrical nipple partially within said housing chamber having a longitudinal axis coaxial with said chamber axis, | The PTS nipple (shown in yellow in Fig. 3c) is partially positioned in the chamber (defined by red housing and end cap), and has a longitudinal axis coaxial with the chamber axis |
| said nipple being axially displaceable within said chamber, | The PTS nipple (yellow) is axially displaceable within the chamber (defined by red housing and end cap). |
| annular first sealing means interposed between said nipple and said housing | Admitted (O-rings on nipple (yellow)) RFA 17 |
| whereby said nipple is sealed with respect to said housing at all axial nipple positions within said chamber, and | The PTS nipple (yellow) is sealed with the body/housing (red) by the first seal O-rings at all axial positions in the chamber. |
| second sealing means interposed between said nipple and said wear plate. | Admitted (shown in orange in Fig. 3c) RFA 18 |

It is my understanding that Defendants assert that several components or elements of the '135 patent claim 1 are not present in the above PTS joint. Based on my

understanding of the meaning of the '135 claim 1 terms as discussed in my Declaration, and as shown from the above table, it is my opinion that each and every component or element of claim 1 is found in the PTS joint identified above. Below I further detail my reasons as to the components or features of the '135 claim 1 that I understand are disputed.

Accommodate Axial Expansion:

In my opinion, the PTS joint is designed to accommodate axial expansion of the drum and drum journal so as to maintain a fluid-tight seal allowing fluid, typically steam, to flow through the rotary joint without leaks. As identified above, the above PTS joint provides for relative axial movement between the PTS body/housing (red) and the nipple (yellow) to accommodate axial expansion and contraction of the drum and drum journal.

Nipple Partially Positioned Within Said Housing Chamber and Axially Displaceable Within Said Chamber

In my opinion, the PTS joint includes a nipple that is partially positioned within the housing chamber or fluid passageway that is defined by the housing which, in my opinion, includes the affixed end flange and end cap. A fundamental function of the rotary joint is to seal with the drum or drum journal through the wear plate. The nipple and the seal ring serve to bridge the gap between the housing (shown in red above) and the wear plate (green) and must seal near both ends. Like the '135 patent Figure 1, the PTS joint includes a nipple (yellow) that engages with the annular seal ring (orange) which provides the seal between the nipple (yellow) and the wear plate (green). On the other end of the PTS nipple, like the '135 patent, the PTS includes first sealing means in the form of two O-rings (Item 25 in D-Patent-0024) positioned between the nipple and

the housing/end cap to seal the nipple with the housing at all nipple axial positions within the housing chamber. In the '135 claim 1, it is my opinion that the claimed housing includes some structure (illustrated as an end cap 74 in '135 Figure 1) holding the o-ring seals 80 (in '135 Figs. 1 and 2) which provide sealing of all axial paths and are necessary for a proper seal between the '135 housing 52 and the nipple 86.

Support Means Supporting Said Housing Substantially Coaxial with the Journal Axis of Rotation

In my opinion, the LSE PTS joint includes support means supporting the PTS body/housing maintaining the housing substantially coaxially aligned with the drum journal axis of rotation. As described in paragraph 15 of my prior Declaration in Annex 5, there are a variety of ways that people skilled in the art would know how the rotary joint could be supported to achieve and maintain coaxial alignment of the rotary joint housing with the journal axis of rotation.

The '135 patent describes one way of supporting the '135 patent housing coaxially with the journal axis of rotation. In the '135 patent Figures 3 and 4, the housing (52) is supported by yokes (62) connected to the housing, rods (66) connected to the yokes and brackets (72) connected to the rods. This support means maintains the housing in coaxial alignment with the journal rotational axis and allows relative axial movement between the nipple (86) and the housing (52) to accommodate axial expansion of the drum and drum journal. The '135 patent advises that modifications may be made to the described and illustrated invention as known by those skilled in the art. See '135 column 5 lines 11-15. In my experience and opinion, the means for supporting the housing is incidental to the patented '135 system. This is due in part that many prior support

designs, including the '135 support shown in '135 Figures 3 and 4, and the PTS ring bracket shown in Figures 2a, 2b, 3a, 3c and D-Patent-0001, -0004, -0006, -0020 and -0051, were known in the art prior to the '135 patent.

In the PTS joint shown in Figure 3c above, a ring bracket (its legs shown in blue) serves to support the rotary joint in place against the force of gravity. The PTS ring bracket rigidly connects to the PTS rotary joint body/housing and maintains substantially coaxial alignment of the housing with the journal axis of rotation. Although the PTS joint in Figure 3c uses different support components than the '135 patent support means shown in Figures 3 and 4, in my opinion, the PTS ring bracket performs substantially the same function, in substantially the same way, to achieve substantially the same result – which is to support the PTS housing in coaxial alignment with the journal rotational axis allowing the rotary joint to accommodate axial expansion through relative movement between the PTS housing and the nipple, as claimed in the '135 claim 1.

I am advised by Counsel that under the patent laws, a component (or components) that provides substantially the same function, in substantially the same way, to produce substantially the same result is considered an equivalent of a patent claimed structure or component for purposes of determining patent infringement. In my opinion, the PTS ring bracket support structure used in Figures 3a, 3c (and shown in Fig. 4c and Figs. 5a and b below) is an equivalent support structure to the example support structure shown in the '135 patent.

I am advised by Counsel that the '135 patent claims 2-12 are considered dependent claims which include the structure/components of claim 1, and any other

dependent claim noted in the particular dependent claim, to form a different patented invention for each dependent claim.

As summarily explained using Figure 3c as an example of the PTS joint and Table 2 below, it is my opinion that the PTS rotary joint includes all of the components or elements claimed in each of the '135 patent dependent claims 2-12.

Table 2 Comparison between '135 Patent Claims 2-12 and PTS Rotary Joint

| '135 Claim | PTS Fig. 3c |
|---|---|
| 2. In a rotary joint as in claim 1, said second sealing means comprising a self-aligning seal. | The PTS second seal (orange) is spherical shaped to be self-aligning. See Figs. 5c, 5f, and 5g below. |
| | |
| 3. In a rotary joint as in claim 1, said housing port comprising an end of said chamber, and | The PTS port serves as an end (56) of the chamber (defined by red). |
| a fluid conduit fitting attached to said housing at said chamber end enclosing said chamber end. | The PTS includes a fluid conduit fitting (108) attached to housing (red) end (56) enclosing the chamber (defined by red). |
| | |
| 4. In a rotary joint as in claim 1, keying means interposed between said housing and said nipple preventing relative rotation between said housing and nipple about said chamber and nipple axis. | The PTS includes keying means in form of a screw or pin (84) preventing relative rotation between the nipple (yellow) and housing (red). |
| | |
| 5. In a rotary joint as in claim 1, spring means interposed between said housing and said nipple axially biasing said nipple and said second sealing means toward said wear plate. | The PTS includes springs (98) between the housing (red) and nipple (yellow) to bias the nipple and seal ring (orange) toward the wear plate (green). |
| | |
| 6. In a rotary joint as in claim 1, said housing having a first end disposed toward said wear plate, | The PTS housing (red) includes a first end surface (58) pointing toward the wear plate (green). |
| an annular end cap mounted upon said housing first end, | The PTS includes an end cap (74) on housing first end surface (58). I consider the PTS end flange to be an extension part of the end cap where both are affixed to and form a part of the housing (red). |
| said first sealing means being mounted on said end cap. | The PTS O-ring seals are mounted on the nipple (yellow) which I consider to be an equivalent sealing means structure. |

| (Table 2 Continued)<br>'135 Claim | (Table 2 Continued)<br>PTS Fig. 3c |
|---|---|
| 7. In a rotary joint as in claim 6, keying means mounted upon said end cap operatively associated with said nipple preventing relative rotation between said housing and said nipple. | The PTS keying means pin (84) is mounted on end flange to prevent relative rotation between nipple (yellow) and housing (red). I consider the PTS two pieces, the end cap and the end flange affixed together, comprising effectively an equivalent end cap structure. |
| | |
| 8. In a rotary joint as in claim 7, said keying means comprising a plurality of axially extending pins mounted on said end cap, | The PTS keying means uses several pins or screws (84) affixed to the end flange that communicates with the end cap (74) which I consider to be an equivalent end cap structure. |
| a radially extending shoulder defined on said nipple intermediate said end cap and said wear plate, and | The PTS nipple (yellow) includes a radially extending shoulder to receive pins (84). |
| a plurality of axially extending holes defined in said shoulder, each hole slidably receiving a pin. | PTS nipple shoulder includes holes to slidably receive pins (84). |
| | |
| 9. In a rotary joint as in claim 8, a compression spring encompassing at least some of said pins,<br>said springs being interposed between said end cap and said nipple shoulder biasing said nipple toward said second sealing means. | The PTS includes springs (98) encompassing at least some of the pins (84) and are positioned between end flange and nipple (yellow) to bias nipple toward the seal ring (orange). I consider the PTS end flange affixed to the end cap to be a part of the end cap and an equivalent end cap structure. |
| | |
| 10. In a rotary joint as in claim 1, said nipple having a radial end disposed toward said wear plate, | The PTS nipple (yellow) has a radial end (92) pointing toward the wear plate (green). |
| said second sealing means comprising an annular seal ring having a first axial end engaging said nipple end and a second axial end engaging said wear plate seal surface. | The PTS includes an annular seal ring (orange) engaging the nipple (yellow) and wear plate (green). |
| | |
| 11. In a rotary joint as in claim 10, said seal ring second end being of a convex spherical segment configuration, and | The PTS seal (orange) includes a convex spherical segment. See also Figs. 5c, 5f, and 5g below. |
| said wear plate seal surface being of a complementary concave spherical segment configuration whereby said seal ring comprises a self-aligning interconnection between said wear plate and said nipple. | The PTS wear plate (green) includes a complimentary concave shape forming a self-aligning interconnection between the wear plate (green) and the nipple (yellow). See also Fig. 5g below. |

| (Table 2 Continued)<br>'135 Claim | (Table 2 Continued)<br>PTS Fig. 3c |
|---|---|
| 12. In a rotary joint as in claim 11, springs interposed between said housing and said nipple biasing said nipple into engagement with said seal ring and said seal ring into engagement with said wear plate seal surface. | The PTS springs (98) are positioned between the housing (red) and the nipple (yellow) biasing the nipple (yellow) against the seal ring (orange) and the seal ring (orange) against the wear plate (green). |

C. LSE Rotary Joints Observed at LSE and GP Brewton

On June 22, 2011, I visited the Georgia Pacific paper mill in Brewton, GA, accompanied by Counsel and Mr. John Eklund, a Kadant Johnson regional sales director. We met the plant foreman who escorted us to the paper machine. The environment was very hot and noisy. We spent about 20 minutes on the floor. With the permission from the foreman, I took 22 pictures of the machine and the rotary joints. Four of the pictures are included herein. Figure 4 shows the paper machine with the various drums numbered (shown as 76, 77, 78 in Fig. 4a and Annex 6) where the process paper is running between them (see Fig. 4a). On each drum there is a visible rotary joint. The Kadant Johnson PTX joints were identifiable by the Kadant branding (PTX – Fig. 4b and 4d). I was advised by Mr. Eklund that the non Kadant-branded joints that we observed at the Georgia Pacific Brewton facility were PTS joints sold by LSE to Georgia Pacific. Fig. 4c. The PTX and PTS joints were installed and operated intermingled side by side.



(a) (b)

(c) (d)

Figure 4. Pictures taken at the Georgia Pacific paper mill, June 22, 2011

On October 4, 2011, I visited the LSE facility in New Orleans, LA, accompanied by Counsel. We were greeted by opposing counsel, Mr. Lance Foster, who escorted us to a sample drum located in a garage-like building in which a disassembled rotary joint with various parts were also laid out on a table. He also helped with lighting and ventilation. I was advised that the disassembled joint was LSE's PTS joint. Likewise, I and Counsel have taken many pictures. Only a subset of those pictures are referenced in this Report and included in Annex 6.

Figures 5a and 5b below show the PTS joint supported by a ring bracket attached to a mockup drum. The inlet and outlet paths are visible too. This joint appeared to be similar in general structure to the rotary joint observed at the Georgia Pacific Brewton facility shown in Fig. 4c.

The disassembled PTS components, some of which are shown in Figs. 5c-g, appear to be similar in general structure to the PTS joints shown in drawings D-Patent-0001 and -0024 shown in Figures 3a and 3b and the PTS joints observed at the Georgia Pacific Brewton facility.

Figure 5c shows the seal ring held in my hand. The visible dark shiny stain on my hand is powder residue from the antimony carbon-graphite ring material (this material seems consistent with the material description for the seal ring 100 as recited in the '135 Patent, column 4, lines 3-13).



(5a) (5b)

(5c)

(5d) (5e)



(5f) (5g)

Figure 5a-g. Pictures taken at the LSE facility, on October 4, 2011

The seal ring spherical surface is also apparent (it is the slanted curved surface facing my left thumb in Fig. 5c, shown also in Figs. 5f and 5g, where in Fig. 5f my left thumb touches it). The outer and inner diameter dimensions shown, respectively, in Figs. 5d and 5e are consistent with the dimensions in the drawing detailed in D-Patent-0045. Annex 6. The ring flat face is also shown (it is the surface on top of the seal ring in Figs. 5d and 5e, where the measuring tape lies on top of that surface). The seal ring flat face mates with the flat surface of the nipple, as shown Fig. 5f. On the other end of the seal ring, the ring spherical convex surface mates with the concave surface of the wear plate, as shown in Fig. 5g. This arrangement of the seal-ring operating between the wear-plate and the nipple (forming two sealing dams, as discussed above) is identical in conception, principle, and material to the seal ring design described in the '135 Patent, and shown and discussed above (see Fig. 3b and p.10). The nipple shown in 5f is consistent with the drawing detailed in D-Patent-0038. Annex 6.

**D. <u>Infringement by the LSE PTS Joint</u>**

As advised by Counsel, it is my understanding that infringement of a patent occurs when another person without permission manufactures, uses, offers for sale or sells a product that is covered by one or more claims in a patent. It is my understanding that a product is covered by or infringes a patent-claim when the product contains every element or component specified in a patent-claim either literally (substantially identical to the claimed component) or through an equivalent structure.

Based on my above comparison of the PTS joints in Figures 3a and 3b, the PTS joints observed at the LSE facility, and my understanding of the construction of the PTS joints observed at the Georgia Pacific Brewton facility, to each of the '135 patent claims 1-12, I conclude that the LSE PTS joint includes each component or element of each of '135 patent claims 1-12. Based on that conclusion and my understanding that the accused PTS joint was sold, installed, and is in operation at the Georgia Pacific Brewton facility, it is my opinion that the PTS joint infringes each of the '135 patent claims 1-12.

Date: 12/28/2011

Itzhak Green